BROADNAX *v.* THE CENTRAL STOCK YARD & TRANSIT COMPANY.

*(Circuit Court, D. New Jersey.* September 28, 1880.)

1. RE-ISSUED LETTERS PATENT No. 5,925, dated June 23, 1874, for improvement in apparatus for rendering lard and tallow and other animal matter, and for crisping and drying the refuse thereof, *held,* under the circumstances of this case, not infringed by the defendant corporation.

2. SAME—INVENTION.—The gist of the invention is the apparatus, or combination of parts, and not any particular instrumentality by which it is put into operation.

    *Seymour* v. *Marsh* 2 O. G. 675.

    *Wheeler* v. *The Clipper Mower Co.* Id. 442.

3. SAME—SAME—RE-ISSUE—CLAIM.—A re-issue is not therefore void which first claims the instrumentality by which the combination or apparatus may be used.

4. SAME—SAME—CONSTRUCTION.—An invention need not in fact be constructed, in order to preserve a patent, when the patentee is a citizen of the United States, and the invention is capable of construction and operation from the model and specifications filed in the patent-office.

    *Wheeler* v. *The Clipper Mower Co., supra.*

In Equity.

*Amos Broadnax,* for complainant.

*Leon Abbot,* for defendant.

NIXON, D. J. The bill is filed in this case against the defendant corporation for infringing re-issued letters patent, No. 5,925, dated June 23, 1874, for improvement in apparatus for rendering lard and tallow and other animal matter, and for crisping and drying the refuse thereof. The original letters patent, numbered 81,473, were granted to the complainant September 1, 1868. The bill of complaint alleges that the first claim of the re-issue has been infringed. This claim is for a stationary tank enclosed in a stationary heating chamber, and fitted with a horizontal rotating stirrer, by which the material under treatment is thrown over and over while it is being rendered or dried.

The principal defences insisted upon at the hearing were —*First*, that the re-issued patent was void, (*a*) because the re-issue embraced more than the original patent; (*b*) because

the alleged invention was not new; and (c) because it was useless and inoperative. *Second*, that the devices used by the defendants did not infringe.

If either defence prevail there must be a decree for the defendants. What is the complainant's patent? It has reference to mechanism or a combination of ingredients for the separation of grease or tallow from animal tissue or fiber. Two modes have long been in use for accomplishing this result—one by steam and hot water, where the rough fat or offal is put into a tank or kettle, and steam is injected in a sufficient quantity and temperature to liquify the fat; and the other by the application of dry external heat to the vessel containing the tissue or fiber, whereby the fat is melted and then drawn off in various ways. One is known as the wet and the other as the dry rendering. Two of the defendant's expert witnesses, Quimby and Reilly, agree that the former process is so much more efficient than the latter, in separating the fat from the animal fiber, that the residuum obtained requires a different treatment to prepare it for use. The elimination of the grease or tallow is so much more complete, that it is only necessary to evaporate the surplus water to have the residual mass fit for commercial purposes; whereas, by the dry process, so much of the fat still adheres to the fiber that loss would ensue unless independent mechanical treatment is resorted to, by pressure or squeezing, to remove the adhering fat before the scraps or cracklings are prepared for fertilizers.

The complainant has sought to remedy the practical inconvenience and expense resulting from the need of these separate processes for rendering and drying, by claiming in his re-issue such a combination of a heating chamber, tank, and stirrer that the material is rendered and the refuse dried in one continuous process in the same apparatus.

In the original letters patent, the patentee, in stating the history of the art, describes both methods and suggests the principal objection to each. The object of his invention was to remedy these defects by furnishing a combination of instrumentalities, all of which were old, but claimed to be new in

their combination and results. He does not pretend that the combination has, *in itself*, any capacity to produce any useful result, and nowhere therein does he indicate that it may be used except in connection with external dry heat. But, in the re-issue, he states broadly that his invention extends to whatever form the apparatus, in its various forms, may take, or in whatever form the heat may be applied, or however the furnace may be combined with the apparatus.

The counsel for the defendant, at the hearing, insisted that this was an enlargement of the scope of the patent; that more was claimed than was suggested in the original; and that hence the re-issue was void, not being for the same invention.

I do not think the re-issue is obnoxious to such a charge. In view of the state of the art, an apparatus for rendering the fat and drying the refuse of animal matter is patentable, apart from any connection with other instrumentalities by which it is to be made operative and efficient. Because one mode only is indicated in the original, the patentee is not shut up to the one mode in the re-issue, as long as it is not of the essence of the invention. The law, indeed, requires him to disclose some mode by which it can be rendered practically useful, but it does not follow that he is confined to that, and may use no other. The gist of the invention is the apparatus, or combination of parts, and not any particular instrumentality by which it is put in operation. *Seymour* v. *Marsh,* 2 O. G. 675; *Wheeler* v. *The Clipper Mower Co.* Id. 442. It may be proper also, in this connection, to allude to another ground of opposition to the complainant's patent, urged by the defendant in the argument.

The proof was that the complainant had never put his alleged invention into practical use, and it was insisted from this fact that the inventor could not maintain a suit for its infringement. But this is not the law, when the patentee is a citizen of the United States. In *Wheeler* v. *The Clipper Mower Co., supra,* Judge Woodruff, in considering this objection to the validity of a patent, says: "If the invention be such that when the thing invented shall be constructed

according to the model and specifications filed, it will operate successfully, as a practical and useful thing, the inventor has satisfied the law, and his patent is valid. He is not bound by law to construct it, in order to preserve his patent."

In our investigation into the design and aim of the patent we are favored with the testimony of the patentee himself, who is also complainant in the case, and who ought to be a competent authority on the question of what the inventor intended to embrace. He says, at folio 552 of the record, that "the essential principle of my [his] invention consists of a tank enclosed in a hot chamber, by which the heat can be kept in the material without danger of burning it, and of an instrument introduced into the tank by which the material can be continually stirred or agitated in such manner as to continually present new particles of the material under treatment to the drying surface of the tank, and to the free heat contained in the tank."

Accepting this as an accurate description of the complainant's patent, the remaining questions are: (1) does the defendant corporation infringe the combination? and (2,) if they are infringers, is the combination of the complainant new? The defendants disclose, in their answer and by their testimony, the mechanism which they employ in rendering the fat and drying the refuse. They allege that upright boilers are used in one portion of their factory, separate and apart from the place where the scraps or residuum are dried. "In these boilers," it is further stated, "the animal matter is placed, and steam is injected therein in the ordinary way until the lard or tallow is boiled out. The lard or tallow is then drawn off from above the water contained in the boiler through any ordinary stop-cock in the side of the boiler. The water is then drawn off, and the refuse animal matter is dumped into a tank underneath, from which it is taken and put into an ordinary screw-press, for the purpose of expelling the excess of water. The scrap or residuum is then taken to another part of the factory and placed in an ordinary horizontal steam-jacketed boiler. In this boiler there is a horizontal shaft with radial arms. The steam is then let into the

jacket of the boiler and the shaft is turned. The result of the operation is that the animal matter is reduced to a fine, dry powder of almost pure animal fiber. The powder is free from odor, and is used as an article of commerce, and, by reason of the great percentage of nitrogen it contains, and by reason of the absence of oleaginous matter from it, it is fitted for immediate use in the manufacture of fertilizers."

The witness Quimby says, (fol. 1128): "Exactly what is done by the defendants is fully and correctly stated in their answer to this suit, which I have read." He further testifies that the defendant's rendering is exclusively by the wet process, in a number of upright boilers, substantially like the rendering tank described in the patent re-issued to Ebenezer Nilson, May 7, 1850; that when the tallow is all rendered the scrap is removed from the boilers, and, after the excess of water is pressed out of it, is carried to another part of the premises and deposited in a number of horizontal steam-jacketed stationary cylinders, in which it is dried by the action of revolving arms; that the rendering and drying are thus two distinct operations, and are not conducted as parts of one process in the same apparatus, but are separately conducted in two different kinds of apparatus, respectively situated in two different parts of their premises. It is in carrying on this second stage of the process, to-wit, in drying the scrap after the rendering and pressure, that the complainant considers his patent to be infringed. He regards the horizontal steam-jacketed stationary cylinders, containing a horizontal shaft with radial arms, as equivalents for the constituents of the combination described in the first claim of his re-issued patent.

Whether he is correct in this depends upon whether a liberal or narrow construction is given to his claim. Any construction broad enough to constitute the defendants infringers, it seems to me, would render his patent void, for lacking the essential qualities of usefulness and novelty. After a careful consideration of what is fairly embraced in the patents granted respectively to John C. Appenzeller, on the 25th of January, 1859, (defendant's Exhibit G;) and to Matthew

Hodkinson, on the 29th of November, 1859, (defendant's Exhibit J;) and to Eston, Jr., and Thiry, on the 27th of February, 1866, (defendant's Exhibit M,)—it is difficult to hold that what the defendant uses infringes the complainant's patent, without at the same time reaching the conclusion that these several patents are anticipations of the claimant's claim.   I find in them the stationary tank, the heating chamber, and the horizontal rotary stirrer in such juxtaposition, and bearing such relations to each other, that it is quite as easy to say that the complainant's patent infringes them, as to affirm that the defendants' infringe the complainant's. Recognizing the fact that a limited construction may be given to the patent, which will allow it to stand, I will not say that it is void for want of novelty; but there must be a decree in favor of the defendants, on the ground that they do not infringe.

Let a decree be entered dismissing the complainant's bill, with costs.